IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 28, 2018

## STATE OF TENNESSEE v. FRANKLIN DEE ROSE

**Appeal from the Criminal Court for Sullivan County**
**No. S63103     James F. Goodwin, Jr., Judge**

_____

## No. E2018-00244-CCA-R3-CD

_____

The defendant, Franklin Dee Rose, appeals the Sullivan County Criminal Court's denial of alternative sentencing for his guilty-pleaded convictions of kidnapping, aggravated domestic assault, possession of a schedule I controlled substance, possession of XLR 11, and possession of drug paraphernalia. Discerning no error, we affirm.

## Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, and ROBERT W. WEDEMEYER, JJ., joined.

William A. Kennedy, Assistant District Public Defender, for the appellant, Franklin Dee Rose.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Kaylin K. Render, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Franklin Dee Rose, entered a "best interest" guilty plea to one count each of kidnapping, aggravated domestic assault, possession of a schedule I controlled substance, possession of XLR 11,[1] and possession of drug paraphernalia. Pursuant to the plea agreement, the defendant received an effective six-year sentence as a

_____

[1]     According to the Code section 39-17-438(a)(1)(K), under which the defendant was charged, XLR 11 appears to be a form of synthetic cannabinoid. *See* T.C.A. § 39-17-438(a)(1)(K); *see also* 21 C.F.R § 1308.11(d)(49) (2018) (listing XLR 11 as a schedule I hallucinogenic substance); Schedules of Controlled Substances: Temporary Placement of Three Synthetic Cannabinoids Into Schedule I, 78 Fed. Reg. 28735, 28735-36 (May 16, 2013) (identifying XLR 11 as a synthetic cannabinoid).

Range II offender. The defendant filed this timely appeal, asserting that the trial court erred by imposing a fully-incarcerative sentence.

Initially, we observe that the defendant failed to include a transcript of the guilty plea submission hearing in the record on appeal. Often, this omission would prevent plenary review of the defendant's challenge. *See State v. Caudle*, 388 S.W.3 273, 279 (Tenn. 2012) (holding that "when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review"). In this case, however, the record contains adequate information for a meaningful review. *See id.* ("[T]he key to meaningful appellate review under the abuse of discretion standard is whether the trial court recites a proper basis for the sentence."). The record before us includes the sentencing hearing transcript, the presentence report, the State's notice of enhancement factors, and the judgments, which is sufficient for our review of the issue presented, and we will presume the guilty plea submission hearing transcript supports the trial court's decision. *See Caudle*, 388 S.W.3d at 279 ("If . . . the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court.").

Because the plea submission hearing transcript is not a part of the record, we glean the following summary of the facts from the presentence report.[2] On December 12, 2013, Bristol police officers responded to a report of domestic assault. Officer Michael Rutledge spoke with the victim, who told him that the defendant had picked her up from work, and, while she was driving, "he put a blue knife to [her] throat with the blade open touching [her] skin." The defendant demanded that the victim drive to the AT&T store to verify that she was not hiding a secret device from him. When the victim denied having a secret device, the defendant "hit [her] on the top of [her] right hand with the bottom of the knife handle." The victim reported that the defendant threatened that "things were going to end badly" if she was hiding a device from him. The victim drove the defendant to the AT&T store for him to check activity on the account. After leaving the store, the victim and the defendant went home, where the defendant "grabbed [the victim] by [her] right arm and told [her] 'This is not a game.'" The victim reported that the defendant "is very controlling and expects [her] to call him on [her] breaks at work and he shows up on [her] lunch breaks." Officer Rutledge observed a red mark on the victim's neck and a red mark and swelling on her right hand.

---

[2] The defendant raised no objection to the presentence report and presented no alternative view of the facts at the sentencing hearing. Therefore, we will consider the facts as stated in the presentence report as a true account of the events giving rise to the defendant's guilty-pleaded convictions.

When officers spoke with the defendant, he denied that he had physically assaulted the victim and claimed that he went to the AT&T store "to get a SIM card" before picking up the victim from work. He told the officers that the victim then "drove them to Kingsport to the AT[&]T store to check out her account." The officers arrested the defendant based on the victim's statements and the visible "marks on her neck and hand" and, upon searching the defendant, found a blue pocket knife. During the arrest, the defendant requested that he be permitted to put on shoes, and he consented to an officer's retrieving his shoes from an upstairs room. When the officer entered the upstairs room, he "noticed a notebook with 2 bags of methamphetamine and a bag of marijuana laying [sic] on top of it." The officer contacted the victim, who owned the home, and obtained written consent to search the home. This search revealed "a glass pipe that had black burn marks on the bottom of it."

The defendant was charged with one count each of aggravated kidnapping, aggravated domestic assault, possession of a schedule I controlled substance, possession of XLR 11, and possession of drug paraphernalia. Pursuant to a plea agreement, the defendant pleaded guilty to kidnapping and all other counts as charged in exchange for an effective sentence of six years as a Range II offender. The only matter to be determined at the sentencing hearing was the manner of service for the defendant's sentence.

At the sentencing hearing, the defendant testified that he is currently serving a 169-month sentence for unrelated federal convictions. He acknowledged, "I'm a career offender. And when it comes to chances, I probably don't deserve any." He stated that the present case arose prior to the birth of his son and that having a son "totally changed [his] life." He claimed that he and the victim, his son's mother, have a good relationship, and he speaks to his now three-and-a-half-year-old son "on a weekly basis." He asked the court to permit him to serve his sentence in the present case on probation so that he "can do right after [he] get[s] out" of federal custody. His son will be approximately 15 or 16 years old when the defendant completes his federal sentence, and the defendant expressed that he would like to "make it back home soon as possible" to his son to "at least be there to . . . keep him away from this."

The State presented no witnesses.

In rendering its decision to impose a fully-incarcerative sentence, the trial court considered

> the evidence presented at . . . the plea hearing; this sentencing
> hearing; the presentence report in its entirety[;] . . . the

-3-

principles of sentencing; arguments made of sentencing alternatives; nature and characteristics of criminal conduct involved; the evidence and information offered by parties on mitigating and enhancing factors; any statistical information provided by Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee . . . ; and the testimony of the [d]efendant . . . that he has made on his own behalf about sentencing; and the [d]efendant's potential for rehabilitation or treatment.

The trial court found the following positive factors: (1) the victim's statement that she was no longer scared of the defendant and that the defendant has changed his behavior and is a good father and (2) the defendant was employed at the time he entered his plea.

The court found the following negative factors: (1) the defendant did not cooperate in preparation of the presentence report; (2) the defendant was out of custody for "only about a month" before being arrested in Virginia; (3) the defendant has a federal conviction in Virginia for which he must serve a 169-month sentence; (4) the defendant admitted that "he was a career offender," which statement was supported by the presentence report; (5) the defendant has a previous probation violation; and (6) the defendant's prior convictions include a violent felony conviction "for malicious stab or . . . shoot" and "possession of a weapon by a convicted felon, not a gun." The court noted that this last factor was the most concerning because the present convictions include "kidnapping and aggravated domestic assault which are also crimes of violence."

The court concluded that "the negative factors outweigh the positive factors" and ordered the defendant to serve his full sentence in confinement.

The defendant appeals the imposition of a fully-incarcerative sentence, arguing confinement is not necessary to protect society or to "avoid depreciating the seriousness of the offense," see T.C.A. § 40-35-103(1)(A), (B), because the defendant will have to serve his 12-year federal sentence in confinement before serving the present sentence. The defendant also argues that alternative sentences have not "frequently or recently been applied unsuccessfully to the defendant" because he has served the majority of his sentences in confinement. The State contends that the trial court did not err.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our

Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* 380 S.W.3d at 706 n. 41 (quoting T.C.A. § 40-35-210(e)). The abuse-of-discretion standard of review and the presumption of reasonableness also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Although the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence, see T.C.A. § 40-35-103(5), "[c]onvicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation" are not considered favorable candidates for alternative sentencing, *id.* § 40-35-102(5)-(6)(A).

That being said, the imposition of an effective six-year sentence in this case mandated the trial court's considering probation as a sentencing option. *See* T.C.A. § 40-35-303(a) ("A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less . . . ."). Traditionally, the defendant has born the burden of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). Such a showing required the defendant to demonstrate that full probation would "subserve the ends of justice and the best interest[s] of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000)).

When a trial court orders confinement and therefore rejects any form of alternative sentencing such as probation, split confinement, or periodic confinement, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

> (1) Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1).

In determining the manner of service of the defendant's sentence, the trial court pointed to the defendant's long criminal history, the violent nature of the defendant's crimes, and the defendant's prior failure to comply with the requirements of probation. The record supports these findings. The presentence report shows the defendant's prior criminal history as spanning nearly two decades, including multiple assault and weapons convictions. Moreover, the presentence report shows that the defendant has previously violated the terms of his probation. The defendant's lengthy criminal history and previous failure to abide by the terms of his probation support the trial court's determination that confinement of the defendant was necessary in this case. *See id.*

Accordingly, we discern no error in the trial court's decision to impose a fully-incarcerative sentence, and we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE